UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CRS, LLC,

        Plaintiff,

    vs.

BITARTS LTD., a foreign corporation,

   and

BIT ARTS INC., a Delaware corporation,

        Defendants.

Case No.  05-0437L

ORDER REGARDING MOTION TO DISMISS

## I.  Introduction

This matter comes before the Court on defendants' "Motion to Dismiss for Lack of Jurisdiction, Failure to State a Claim, or, in the Alternative, to Transfer."[1]  The controversy arises out of defendants' alleged infringement of two patents held by plaintiff designed to enhance computer security via software encryption.  For the reasons set forth below the Court grants the motion to dismiss for lack of personal jurisdiction with respect to defendant Bit Arts, Inc. ("BitArts NY") but denies the same with respect to defendant BitArts, Ltd. ("BitArts UK").  The Court also denies defendants' request to dismiss for failure to state a claim and for a transfer of venue.

---

[1] This matter can be decided on the memoranda, declarations, and exhibits submitted by the parties.  Defendant's request for oral argument is, therefore, DENIED.

ORDER REGARDING MOTION TO DISMISS - 1

## II.  Background

Plaintiff CRS, a Washington corporation, acquired the patents at issue by assignment and brings the present action for patent infringement against defendant BitArts UK, a British software company, and its domestic subsidiary, BitArts NY.  In August 2002, BitArts UK entered into an licensor-licensee relationship with Smarte Solutions ("Smarte/Vincera"), a corporation headquartered in Texas.  The agreement granted Smarte/Vincera the exclusive right to distribute BitArts products worldwide.  Plaintiff alleges that pursuant to the agreement, BitArts UK's anti-piracy technology, including the accused Titanium product, was rebranded and/or incorporated into the Smarte/Vincera product line.  Smarte/Vincera then licensed the products incorporating the accused technology to Microsoft, a Washington resident.  Defendants move to dismiss the case for lack of personal jurisdiction and failure to state a claim.  Defendants also request that the dispute be transferred to the Southern District of New York.

## III.  Personal Jurisdiction

### A.    Standard

Because this issue is being decided in the absence of an evidentiary hearing, plaintiff need only make a prima facie showing that jurisdiction is proper in this district, with all uncontroverted facts taken as true and all disputed facts construed in the light most favorable to plaintiff.  Digital Control, Inc. v. Boretronics, Inc., 161 F. Supp.2d 1183, 1185 (W.D. Wash. 2001); Arko Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995).  In order for personal jurisdiction to exist over non-resident defendants, the assertion thereof must comport with both Washington's long-arm statute and constitutional due process.  Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives, 103 F.3d 888, 893 (9th Cir. 1996).  However, because Washington's long-arm statute is coextensive with the limits of federal due process, Shute v. Carnival Cruise Lines, 113 Wn.2d 763, 771 (1989), the state and federal requirements coalesce.  Thus, only a single analysis is necessitated.  Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2002).

The due process clause permits a court to exercise jurisdiction over non-resident defendants when those defendants have "minimum contacts" with the forum state.  This ensures

ORDER REGARDING MOTION TO DISMISS - 2

1  that the exercise of personal jurisdiction "does not offend the traditional notions of fair play and

2  substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  While

3  minimum contacts may be predicated upon either general jurisdiction or specific jurisdiction,

4  plaintiff does not allege the existence of general jurisdiction.  Therefore, the Court will only

5  address specific jurisdiction.

6         In patent infringement actions, the minimum contacts analysis for specific jurisdiction is

7  governed by the law of the Federal Circuit.  The applicable three-part test is as follows: (1)

8  defendants must have purposefully directed their activities at the residents of the forum state; (2)

9  the injuries for which recovery is sought must have arisen out of or be related to defendants'

10 activities in the forum state; and (3) the assertion of personal jurisdiction over defendants must be

11 reasonable and fair.  Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297

12 F.3d 1343, 1351 (Fed. Cir. 2002).  In order to establish the first prong, plaintiff must show that

13 defendant has "taken deliberate action with the forum state or . . . has created continuing

14 obligations to forum residents."  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995).  The

15 second prong is satisfied when plaintiff can demonstrate that but for defendants' activities in the

16 forum, plaintiff would not have been injured.  Shute v. Carnival Cruise Lines, 897 F.2d 377, 385

17 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585 (1991).  Once plaintiff has established that

18 there are sufficient contacts to satisfy due process, the third prong places the burden upon

19 defendants to demonstrate that the exercise of jurisdiction would nonetheless be unreasonable.

20 Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985); see also id. at 472-73 (suggesting

21 that a presumption of fairness and reasonableness arises upon a showing that the defendant

22 purposefully directed its activities at the forum state).  Unreasonableness can be demonstrated

23 through examination of a number of factors, including the burden on defendant, the interests of

24 the forum state, plaintiff's interest in obtaining relief, the interstate judicial system's interest in

25 obtaining the most efficient resolution of controversies, and the shared interest of the several

26 states in furthering fundamental social policies.  Electronics For Imaging, Inc. v. Coyle, 340 F.3d

27 1344, 1352 (Fed. Cir. 2003).

28 ORDER REGARDING MOTION TO DISMISS - 3

**B.      Discussion**

Despite apparent agreement with regard to the foregoing standard, the parties strongly disagree as to what facts are relevant when conducting the minimum contacts analysis and even as to the facts themselves.  The crux of plaintiff's contentions seems to be that defendants have purposefully availed themselves of this forum by licensing an accused product to a Washington resident, creating an exclusive licensor-licensee relationship with a company that does business with forum residents (i.e., Smarte/Vincera), and offering the accused products for sale on their web site.  Defendants, for their part, contend that the above-mentioned contacts are insufficient to support personal jurisdiction.  They argue that plaintiff employed a Washington resident to request a copy of the accused product in an underhanded effort to manufacture jurisdiction, that the contacts Smarte/Vincera has with Washington should not be imputed to them, and that the web site is irrelevant.

**1.      BitArts NY**

**a.      Purposeful Availment of Activities**

Plaintiff contends that licensing an evaluation copy of "Titanium" to Mr. Geyer, a Washington resident, constitutes activity deliberately directed at this forum, thus justifying the exercise of jurisdiction.  The Court disagrees.

The facts surrounding Mr. Geyer's licensing of the accused product are, at best, dubious. Plaintiff, while presently making no attempts to conceal that Mr. Geyer is in its employ, neither disclosed this fact when Mr. Geyer sent two e-mails to BitArts UK requesting a trial copy of the accused product and a third requesting assurance that BitArts NY would contact him, nor candidly characterized the issue in its submissions to the Court.  Instead, plaintiff maintains that BitArts NY's contacts with Mr. Geyer were "unsolicited."  BitArts NY's response to Mr. Geyer's e-mails, which specifically requested a response, can hardly be called "unsolicited" contact. Rather, Mr. Geyer's efforts were "nothing more than an attempt by plaintiff to manufacture a contact with this forum sufficient to establish personal jurisdiction."  Millennium Enterprises, Inc. v. Millennium Music, LP, 33 F. Supp.2d. 907, 911 (D. Or. 1999) (so holding where an

ORDER REGARDING MOTION TO DISMISS - 4

1  Oregon resident, at the bidding of her employer, a friend of plaintiff's counsel, purchased a

2  compact disc through the defendant's web site).  As in <u>Millennium Enterprises</u>, "[d]efendants

3  cannot be said to have 'purposefully' availed themselves of the protections of this forum when it

4  was an act of someone associated with plaintiff, rather than defendants' Web site . . . that brought

5  the defendants' product into this forum."  <u>Id</u>. at 911; <u>accord</u> <u>Edberg v. Neogen Corp</u>., 17 F.

6  Supp.2d. 104, 112 (D. Conn. 1998) ("Only those contacts with the forum that were created by the

7  defendant, rather than those manufactured by the unilateral acts of the plaintiff, should be

8  considered for due process purposes.").

9       CRS also alleges that personal jurisdiction is proper over BitArts NY "because the parent

10  does business through it."  Response at 19.  In support of this allegation, plaintiff points the

11  Court to a single footnote in a Federal Circuit case which states that where a plaintiff alleges that

12  a private individual does business as a corporation, the contacts of the individual are attributed to

13  the corporation.  <u>Electronics For Imaging</u>, 340 F.3d at 1349 n.2.  This is unconvincing authority

14  to say the least.  While it is true that in certain limited circumstances, jurisdiction over the parent

15  can be based on the contacts its subsidiary has with the forum, <u>see generally</u> <u>Doe v. Unocal</u>

16  <u>Corp</u>., 248 F.3d 915, 925-29 (9th Cir. 2001) (discussing the alter ego and agency exceptions to

17  the general rule that a parent–subsidiary relationship is not sufficient to establish personal

18  jurisdiction over the parent on the basis of the subsidiary's minimum contacts with the forum),

19  plaintiff has not cited any authority supporting the inverse proposition that jurisdiction over the

20  subsidiary can be based on the contacts of the parent.

21       In light of the foregoing discussion, the Court holds that it does not have personal

22  jurisdiction over defendant BitArts NY.

23       **2.     BitArts UK**

24           **a.     Purposeful Availment of Activities**

25       Plaintiff's primary jurisdictional allegation with regard to BitArts UK is that it has availed

26  itself of this forum by way of the "stream of commerce."  Specifically, plaintiff contends that the

27  facts surrounding the relationship between BitArts UK, Smarte/Vincera, and Microsoft are

28   ORDER REGARDING MOTION TO DISMISS - 5

1    sufficient to satisfy the stream of commerce theory.  There is a divergence of opinion in the

2    federal judiciary as to the precise requirements of the stream of commerce theory.  Asahi Metal

3    Industry Co. v. Superior Court, 480 U.S. 102, 110 (1987).  "The nature of that split centers upon

4    the answer to the question of whether, in order to apply the stream of commerce theory, the

5    defendant's action must be purposefully directed toward the forum state or whether the mere

6    placement of goods in the stream of commerce with the expectation of realizing an economic

7    benefit from their retail sale is sufficient for the forum state to exercise jurisdiction."  Motorola,

8    Inc. v. P-C Tel., Inc., 58 F. Supp.2d at 355 n.8 (D. Del. 1999).  For the following reasons, this

9    Court holds that regardless of which of the foregoing stream of commerce theories applies, the

10   plaintiff has made the required jurisdictional showing.

11          In anticipation of and response to plaintiff's stream of commerce argument, BitArts UK

12   relies heavily upon Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355 (Fed.

13   Cir. 1998).  Motion at 11; Reply at 8-9.  At first blush, the case appears to weigh in favor of

14   defendant's contentions that personal jurisdiction should not be based on its licensor-licensee

15   agreement with Smarte/Vincera.  However, there are important and dispositive factual

16   distinctions between Red Wing Shoe and the instant action.  The defendant in Red Wing Shoe

17   merely licensed an intangible legal right – namely, a covenant not to sue; therefore, no product

18   ever entered the stream of commerce.  Red Wing Shoe, 148 F.3d at 1362 (holding that the stream

19   of commerce theory is inapplicable where no product enters the stream).  In contrast, BitArts UK

20   has licensed a number of tangible products that actually were placed in the stream of commerce.

21   Thus, BitArts UK's reliance on Red Wing Shoe is misplaced.

22          The Court is guided instead by the principles enunciated in World-Wide Volkswagen and

23   Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (Fed. Cir. 1994).  In Beverly Hills

24   Fan, the court was mindful of the distinction between the "unilateral actions of a third party" that

25   cause a defendant's product to enter a forum, for which jurisdiction will not lie, and the

26   purposeful shipment of the product through an established distribution channel.  Id. at 1566-67

27   (citing World-Wide Volkswagen, 444 U.S. at 298).  Viewed in the light most favorable to

28    ORDER REGARDING MOTION TO DISMISS - 6

1  plaintiff, the evidence at hand demonstrates that (1) BitArts UK was fully aware that Washington

2  was a likely destination for its products and (2) deliberately placed those products in the stream

3  that flows through this forum.  Specifically, BitArts UK knew Titanium was being rebranded by

4  Smarte/Vincera and knew that Smarte/Vincera was licensing the rebranded product to Microsoft,

5  a forum resident.  In fact, it advertised this knowledge on its web site.[2]   This shows that BitArts

6  did in fact place its products in the stream of commerce with the anticipation that they would end

7  up being used by Microsoft in this judicial district.  Therefore, the Court concludes that the

8  alleged presence of the infringing products in this forum did not come about by the unilateral

9  activities of Smarte/Vincera, but rather arose "from the efforts of the [BitArts UK] to serve,

10  directly or indirectly, the market for its product."  World-Wide Volkswagen, 444 U.S. at 297.

11       This conclusion is bolstered by an examination of the terms of Smarte/Vincera distribution

12  agreement.  The agreement engendered continuing obligations to Washington on the part of

13  BitArts UK in that it required, as needed, the provision of end user support by the defendant to

14  Smarte/Vincera's customers.  Declaration of Steven Stolle ("Stolle Decl."), Ex. 6, p. 15.  BitArts

15  UK also agreed to indemnify Smarte/Vincera against any claims of patent infringement, id., p. 5,

16  implying that defendant's relationship with its licensee was more involved than its motion and

17  reply might lead one to believe.  See Red Wing Shoe, 148 F.3d at 1362 (suggesting that there are

18  insufficient contacts between the defendant and the forum in part because "none of [the

19  defendant's] . . . licensees requires it defend or pursue patent infringement actions involving the

20  [accused] . . . patent").

21       Because BitArts UK did indeed knowingly place its products into the stream of commerce,

22  it "seems entirely reasonable that [BitArts] . . . should expect to appear in this . . . [forum] from

23  _____

24       [2]By itself, BitArts UK's web-based advertising is probably insufficient to justify the assertion of
    personal jurisdiction.  See Digital Control, 161 F. Supp.2d at 1187 (opining that indiscriminate, world-

25  wide forms of advertising, such as that found on the internet, "does not give rise to an inference of
    purposeful or deliberate action toward Washington residents and would not cause defendants to

26  anticipate being haled into court here.").  However, listing Microsoft as a customer is much more that
    mere indiscriminate advertising, especially when considered in concert with the Smarte/Vincera

27  agreement and BitArts UK's receipt of royalty payments as a result of that agreement.

28  ORDER REGARDING MOTION TO DISMISS - 7

1  time-to-time in order to resolve disputes related to the distribution and sale of those products."

2  Motorola, 58 F. Supp.2d at 354 n.7; see also id. at 355 (opining that defendant "can hardly be

3  heard to complain that it did not know the likely destination of some of its products would

4  include this forum. Indeed, the company, acting in concert with its licensees, sells it products

5  expressly for integration into end user products with full knowledge that the goods will then be

6  placed into established distribution channels that service the [forum] State."). Consequently, the

7  Court holds that defendant BitArts UK has purposefully availed itself of this forum.

8          **b.     Arising out of and Reasonableness**

9  As mentioned above, the second prong of the minimum contacts analysis is satisfied when

10  the plaintiff can demonstrate that but for the defendants' activities in the forum, the plaintiff

11  would not have been injured. Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir.

12  1998). Because BitArts UK's infringing products have permitted it to derive and receive revenue

13  from Washington, including royalty income from Microsoft, the Court concludes that plaintiff's

14  financial injuries would not have occurred but for BitArts UK's forum related activities.

15  Therefore, the claims presented by CRS arise out of BitArts UK's contacts with this forum.

16  The Court next considers whether exercising personal jurisdiction over BitArts UK is

17  reasonable and fair. The defendant has the burden of overcoming the presumption of

18  reasonableness, and must present a "compelling case" to do so. Burger King, 471 U.S. at 472-73.

19  Generally, dismissal on grounds of unreasonableness is "limited to the rare situation in which the

20  plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so

21  attenuated that they are clearly outweighed by the burden on the defendant of litigating within the

22  forum." Beverly Hills Fan, 21 F.3d at 1568. While there is undoubtedly a burden associated

23  with litigating in another country, beyond positing that it is unfair and expensive to be subject to

24  suit so far afield, defendant BitArts UK has not offered sufficiently compelling reasons why the

25  presumption of reasonableness should be rebutted. Instead, and especially in light of the

26  abovementioned indemnification and end-user support clauses, it seems entirely fair and

27  reasonable to hale BitArts UK into court in Washington. See World-Wide Volkswagen, 444 U.S.

28  ORDER REGARDING MOTION TO DISMISS - 8

1   at 297 (holding that where the presence of a product in the forum stems from a defendant's direct

2   or indirect efforts to serve the market for its products, "it is not unreasonable to subject it to

3   suit").

### IV.  Failure to State a Claim

5   Plaintiff alleges that "Titanium and other products" infringe upon their patents.  Both

6   parties recognize that Fed. R. Civ. P. 8(a) permits notice pleading and are in apparent agreement

7   that plaintiff's complaint, at least with regard to "Titanium," satisfies the liberal notice pleading

8   standard.  Their disagreement surrounds the question of whether plaintiff's allegation that "other

9   products" infringe upon its patents satisfies the notice pleading standard.  Defendant contends

10  that it does not and therefore moves that the complaint as to "other products" be dismissed under

11  Fed. R. Civ. P. 12(b)(6).

**A.   Standard**

13  Motions pursuant to Rule 12(b)(6) test whether the allegations contained in the plaintiff's

14  complaint satisfy the requirements of Rule 8(a).  Rule 8(a) merely requires a complaint to contain

15  "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

16  Civ. P. 8(a).  The Supreme Court has held that a complaint should be dismissed for failure to

17  state a claim only if it "appears beyond doubt that . . . [plaintiff] can prove no set of facts in

18  support of . . . [its] claim which would entitle . . . [it] to relief."  Conley v. Gibson, 355 U.S. 41,

19  45-46 (1957); see also Gen-Probe, Inc. v. Amoco Corp., Inc., 926 F. Supp. 948, 952 (S.D.

20  Cal.,1996) ("The Rules do not require an elaborate recitation of every fact a plaintiff may

21  ultimately rely upon at trial, but only a statement sufficient to give the defendant fair notice of

22  what the plaintiff's claim is and the grounds upon which it rests." (citing Conley, 355 U.S. at

23  47)).  In reviewing Rule 12(b)(6) motions, all allegations of material fact are taken as true and

24  construed in the light most favorable to plaintiff.  Oscar v. Univ. Students Co-Operative Ass'n,

25  965 F.2d 783, 785 (9th Cir. 1992).  As the moving party, defendant bears the burden of

26  demonstrating that there are no facts under which plaintiff is entitled to relief based on the

27  allegations contained in the complaint.  Gould Electronics Inc. v. U.S., 220 F.3d 169, 178 (3d

28  ORDER REGARDING MOTION TO DISMISS - 9

1 | Cir. 2000).                **B.        Discussion**

2 | **1.        Infringement**

3 | This Court could find but one reported case

4 | specifically supporting defendants' contentions that the term "other products" fails to meet the

5 | notice pleading standard. Windy City Innovations, LLC., v. America Online, Inc., 227 F.R.D.

6 | 278, 283 (N.D. Ill. 2005). However, Windy City Innovations is not binding upon this Court and

7 | itself cites no authority for its conclusion. Moreover, plaintiff's contention that ambiguous

8 | pleading is necessitated by the frequently changing names of the infringing products (Softlox,

9 | Trialwrap, etc.) appears to be well-founded. See, e.g., Stolle Decl., Ex. 4 (containing a

10 | Smarte/Vincera press release which states that the "exclusive worldwide distribution license"

11 | between Smarte/Vincera and BitArts UK covers BitArts UK's "full line of anti-piracy software,

12 | including *Titanium and related products*") (emphasis added). Therefore, the Court denies

13 | defendants' 12(b)(6) motion with respect to the infringement claim.

14 | **2.        Inducement**

15 | In order to state a claim for inducement, plaintiff must

16 | allege that a party other than the defendants' has infringed. 35 U.S.C. § 271(b) ("Whoever

17 | actively induces infringement of a patent is liable as an infringer"); Water Technologies Corp. v.

18 | Calco, 850 F.2d 660, 668 (Fed. Cir. 1988) ("a person infringes by actively and knowingly aiding

19 | and abetting another's direct infringement"). Plaintiff has done so. In its response to defendants'

20 | motion, plaintiff alleges that all of BitArts' licensees and end users are direct infringers, and in its

21 | Second Amended Complaint, plaintiff contends that defendant has induced others to infringe the

22 | patents via distribution and sales to resellers and end users of the accused products. Therefore,

23 | the Court finds that plaintiff has stated an actionable claim for inducement; the 12(b)(6) motion

24 | with respect to inducement is denied.

25 | **V.  Transfer of Venue**

26 | Finally, defendants request a transfer of venue to the Southern District of New

27 | York pursuant to 28 U.S.C.§ 1406. In contrast to 28 U.S.C. § 1404, which provides for transfer

28 | ORDER REGARDING MOTION TO DISMISS - 10

1    where both the original and requested venue are proper, Section 1406 applies where the original

2    venue is improper and permits a court to either dismiss or transfer the case.  <u>Jumara v. State Farm</u>

3    <u>Ins. Co.</u>, 55 F.3d 873, 878 (3d Cir. 1995).  Because this Court has personal jurisdiction over

4    BitArts UK, which makes venue in this judicial district proper under 28 U.S.C. § 1391,

5    defendants' request for transfer of venue pursuant to Section 1406 is denied.

6                                    **VI.  Conclusion**

7             For the foregoing reasons, it is hereby ORDERED that the motion to dismiss

8    for lack of jurisdiction be GRANTED with respect to defendant BitArts NY and DENIED with

9    respect to defendant BitArts UK.  In addition, it is hereby ORDERED that the motion to dismiss

10   for failure to state a claim and for transfer of venue be DENIED.[3]

11

12       DATED this 25th day of July, 2005.

13

14                                *MrS Lasnik*

15                                Robert S. Lasnik
                                  United States District Judge

16

17

18

19

20

21

22

23

24        [3] In their memoranda, the parties accuse each other of perpetrating a "fraud on this Court,"

25 Response at 1, and of making "scurrilous accusations."  Reply at 1.  The Court reminds the parties of the
Introduction to the Local Rules which, in relevant part, provides that "[t]he judges of this district expect

26 a high degree of professionalism from the lawyers practicing before them."  The tenor of the submissions
to date has not always been in keeping with this expectation and both sides would be well-served to tone

27 down the rhetoric in future filings.

28 ORDER REGARDING MOTION TO DISMISS - 11